RHODE ISLAND HOSPITAL TRUST COMPANY *et al., Trustees*
*vs.* JONATHAN H. BATEMAN *et al.*

JUNE 22, 1961.

PRESENT: Condon, C. J., Roberts, Paolino, Powers, and Frost, JJ.

PAOLINO, J. This is a bill in equity for the construction of the fifth clause of the will of William Sidney Bateman, late of the city of Newport, deceased. When the cause was ready for hearing for final decree in the superior court it was certified to this court for our determination in accordance with G. L. 1956, §9-24-28.

The testator died December 6, 1948 and thereafter his will was duly proved in the probate court of the city of Newport. He was survived by a son and a daughter, three grandchildren and one great-grandchild. By the fifth clause of his will, after bequeathing one fourth of his residuary estate to his son, one fourth to his daughter and one sixteenth to her son, he left an undivided seven sixteenths to his trustees in trust with the following directions:

"To divide the same into as many equal shares and separate trust funds as there are children born and maybe [sic] born (WSB) of my said son Sidney, and my said grandson, Horace, the issue of any deceased said children dying before they attain the age of twenty-five years to take per stirpes and not per capita, and to hold and manage those shares and to pay over so much of the net income accruing therefrom to each of said children as my trustees deem necessary, for the care, maintenance, education and support of said children until such time as said children respectively attain the age of twenty-five years; and as and when each of said children attains the age of twenty-five years my said trustees shall pay over, free and discharged of this trust, to him or her the principal of that particular share or trust fund with the accumulated income; and the share in the said particular trust fund of any of such children who may die before he or she shall attain the age of twenty-five years, leaving issue, shall be divided equally among the said issue per stirpes and not per capita; and the share in the

said particular trust fund of any of such children who may die before he or she shall attain the age of twenty-five years leaving no issue, shall be divided equally and added to the shares of the surviving children. If all of the said children of my said son and my said grandson die before attaining the age of twenty-five years leaving no issue, then said trust shall terminate and the same shall be paid equally to my said son, Sidney, and to my said daughter, Dorothy, or the survivor, to them, their heirs and assigns forever. If, however, both my said son Sidney and my said daughter Dorothy are not living at that time to take, it being my intent that I shall not die intestate as to any of my property, then and such property of mine as might be deemed intestate shall be paid, free and discharged of all trust, in equal shares to the said charities, their successors and assigns, for their general purposes * * *."

The complainants Rhode Island Hospital Trust Company and William Sidney Bateman, Jr., the testator's son, are the present trustees. The respondents are the testator's daughter, Dorothy; his son William Sidney Bateman, Jr., individually; Dorothy's son, Horace Palmer Beck, Jr.; William Sidney Bateman, Jr.'s two children, Jonathan H. Bateman and Melinda Bateman; and Horace Palmer Beck, Jr.'s daughter, Bushnell Bird Beck. The minor children Melinda Bateman and Bushnell Bird Beck were represented by a guardian ad litem, and a representative of the contingent interests of persons not in being or not ascertainable, whose interests may be affected by the cause, was appointed pursuant to the provisions of G. L. 1956, §9-14-17.

The testator was an elderly man when he executed his will on August 5, 1948. His descendants at that time were his son and daughter; the two children of his son, Jonathan H. Bateman born May 4, 1935, and Melinda Bateman born April 13, 1946; his daughter's son, Horace Palmer Beck, Jr. born September 27, 1920; and Horace's daughter, Bushnell Bird Beck born July 11, 1948. These descendants are all living and there have been no children born to either Wil-

liam Sidney Bateman, Jr. or Horace Palmer Beck, Jr. since the execution of the testator's will.

The trustees have been administering the trust principal in one fund and transferring the income therefrom in equal shares to three separate funds for the benefit respectively of Jonathan H. Bateman, Melinda Bateman and Bushnell Bird Beck, and have either paid out the income for the benefit of the beneficiary or accumulated and invested it as a part of each separate fund or partly so paid and partly so accumulated and invested it. The trust was originally administered by the testator's son and Chase Page as co-trustees. Upon the latter's resignation the Rhode Island Hospital Trust Company in 1955 was appointed as cotrustee.

It appears that by letter dated June 24, 1955, William Sidney Bateman, Jr., Dorothy Bateman Beck and Horace Palmer Beck requested the trust company to accept such appointment with the following directions:

"* * * until the birth of another child to William Sidney Bateman, Jr. or Horace Palmer Beck to pay or accumulate the trust income hereafter received, and also that heretofore received with due regard for any payments already made therefrom for the account of Jonathan Bateman, for the equal benefit of Jonathan Bateman, Melinda Bateman and Bushnell Bird Beck, until one of them becomes twenty-five or dies under that age."

They severally agreed to hold the trust company harmless from any loss or damage resulting from its compliance with said request. In addition they agreed in their letter that upon the birth of another child to either William Sidney Bateman, Jr. or Horace Palmer Beck, or upon one of the said Jonathan Bateman, Melinda Bateman or Bushnell Bird Beck attaining twenty-five or dying under that age, the trustees would seek from this court a construction of the will with reference to payment of the income and principal of the trust.

Jonathan H. Bateman attained the age of twenty-five years on May 4, 1960. Because the trustees were in doubt with reference to the payments of principal and income now that one of the beneficiaries has attained the age of twenty-five years, they filed the instant bill in equity for construction of the fifth clause of the will and for instructions of the court in answer to the following questions:

"1.) As to whether one-third of the principal of the trust should now be paid to him [Jonathan H. Bateman], together with any accumulated and accrued income thereon, or whether some part or fraction of said one-third of the principal of the trust and of the income thereon thereafter should be retained by the trustees to provide a fund or a part of a fund for children, if any, of William Sidney Bateman, Jr. and/or of Horace P. [Palmer] Beck, Jr., who may be born in the future; and

"2.) As to whether Jonathan H. Bateman, Melinda Bateman and Bushnell Bird Beck are each entitled to one-third of the trust income received or accrued by May 4, 1960, the date when Jonathan H. Bateman became twenty-five;

"3.) As to who is entitled to the trust income from and after May 4, 1960 and in what proportions and for how long?"

At the hearing in the superior court, besides oral testimony, documentary evidence was introduced relative to the pertinent family facts and to the administration of the trust. The solicitor who drew the will testified about the circumstances surrounding its execution. He stated that, at the request of the testator, the words "born and maybe born" were inserted in longhand by him and initialed by the testator immediately after the provision for division "into as many equal shares and separate trust funds as there are children." He also testified that before the will was signed he wrote at the end of the will just above the testator's signature the statement reading: "The words

'born and may be born' on second page added before execution."

In addition he testified as to certain statements made by the testator at the time of the execution of the will in regard to his intention in inserting therein the words "born and maybe born." Upon objection by some of the parties the trial justice ruled that such evidence was inadmissible, but permitted the solicitor to be examined relative to such statements so that this court, if it deemed his testimony material to a determination of the testator's intention, might consider it.

These statements were in substance that the testator did not believe that his son would have any more children though it was possible that he would; that there was a possibility that his grandson Horace would have more children since he was a much younger man; and that he wanted all of his grandchildren and great-grandchildren to share alike and therefore wanted to look out for them even though they were not then born. Thereafter the cause, being ready for hearing for final decree, was certified to this court.

The answers to the questions requested depend upon the intent of the testator. As was said in *Industrial Trust Co.* v. *Saunders,* 71 R. I. 94, at page 98:

"The primary rule is that the intention of the testator, if definitely ascertainable and lawful, must govern and that such intention must be ascertained, if possible, from a consideration of the whole will alone. It is also well established with us that, in a proper case, evidence of the circumstances surrounding the testator and existing at the time of the execution of a will may be considered in connection with the will as an aid in ascertaining his intention as therein expressed."

The determination of the questions in the instant cause depends entirely on the meaning to be given to the words "born and maybe born" as they appear in the will. While it is generally well established that in a proper case evi-

dence of the circumstances surrounding the testator at the time of the execution of the will, such as family facts and similar matters, may be considered in connection with the will as an aid in ascertaining a testator's intentions as expressed in his will, it is equally well settled that ordinarily evidence of statements as to his intention made by a testator at the execution of his will is incompetent and inadmissible. *Rhode Island Hospital Trust Co*. v. *Bradley,* 41 R. I. 174; *Rhode Island Hospital Trust Co*. v. *Tucker,* 51 R. I. 507; Thompson, Wills (3d ed.) §334, p. 498. The trial justice did not err in excluding the testimony concerning statements as to his intention made by the testator to his solicitor at such time.

William Sidney Bateman, Jr. in his individual capacity argues that by the changes which the testator made in the will at the time of its execution, namely, the addition of the words "born and maybe born," he clearly showed an intention to use such words to create a gift to a class which would include grandchildren and great-grandchildren, whether born to his son and/or his grandson before or after the testator's death. He further argues that the words "born and maybe born" are not ambiguous; that there is therefore no need for construing said clause; and that consequently the rule of convenience does not apply.

On the basis of these arguments he contends that the provisions of the clause in question violate the rule against perpetuities because in the case of grandchildren and great-grandchildren born after the death of the testator a period of more than a life in being at the testator's death and twenty-one years would be involved. He argues that the trust is therefore void and that consequently he and his sister Dorothy Bateman Beck, as the sole heirs of the testator, are entitled in equal shares to the entire principal of the trust estate and all income thereon since May 4, 1960. As to the income received or accrued by May 4, 1960, the date when Jonathan became twenty-five years

of age, because the Rhode Island Hospital Trust Company acted in reliance on the letter of June 24, 1955 which he signed together with his sister and Horace Palmer Beck, he states that Jonathan, Melinda, and Bushnell are each entitled to one third of such income.

Although the testator's daughter in her answer to the bill in equity alleges in substance that she desires to make no contention as to the proper construction of the clause in question, she has filed a brief in which she urges that the testator's insertion of the words "born and maybe born" indicates clearly that he contemplated that children might be born to his son and grandson Horace after his, the testator's, death and that he intended by the use of those words that such after-born children should share in the trust estate. She argues that said intention of the testator should not be defeated by the direction in the will for payment to a child when he or she attains the age of twenty-five years of his or her share of the trust estate. Finally she states that because she desires that the testamentary wishes of her father be fulfilled so far as possible, she subscribes to the argument presented by the guardian ad litem for persons not in being or not ascertainable that the trust be continued for the benefit of the children now living and of any that may hereafter be born until such time as it can be determined finally that her brother William and her son Horace will have no more children.

The guardian ad litem for the minor children Melinda and Bushnell contends in substance that the limitation, "children born and maybe born of my said son Sidney, and my said grandson, Horace," is a limitation to a class; that the testator intended an immediate gift and in accordance with the rule of convenience the class closed at the testator's death; and that in any event the use of the words "and maybe born" at most, in accordance with the rule of convenience, must be construed to mean that the testator intended to include only those children of his son William

and of his grandson Horace who were born not later than the time when the first child reached twenty-five years of age and became entitled to receive distribution of his share. In the instant cause there have been no children born since the testator's death and prior to Jonathan's reaching twenty-five. Therefore the same persons would be included in that class regardless of which closing date is used.

From such premises the said guardian ad litem concludes that Jonathan is now entitled to one third of the principal of the trust and also to the income accumulated and accrued on that share prior to May 4, 1960 less the amounts previously paid therefrom for his care and education, and that the same conclusion should follow when Melinda and Bushnell each reach twenty-five. In addition he concludes that Jonathan, Melinda and Bushnell are each entitled to the income accruing to his or her respective share during the period after they each respectively reach twenty-five and prior to the actual distribution of their share of the principal and accumulated income by the trustees.

The conclusions reached by respondent Horace Palmer Beck, Jr. are substantially the same as those of the guardian ad litem for the minor children Melinda and Bushnell, and therefore require no further discussion.

We shall next discuss the contentions of the guardian ad litem for persons not in being or not ascertainable. He argues in substance that by the use of the words "born and maybe born" and in view of the circumstances appearing in the record which surrounded the testator and existed at the time of the execution of the will, it was clearly the intention of the testator that all children of William Sidney Bateman, Jr. and Horace Palmer Beck, Jr., whether born before or after the death of the testator, should share in the trust estate. Consequently he concludes that said intention can be carried out by instructing the trustees to pay Jonathan, Melinda and Bushnell one-third shares of the income received and accrued by May 4, 1960 and one

third of the income accruing after that date to each of said children until the birth of other children of William Sidney Bateman, Jr. or Horace Palmer Beck, Jr. and thereafter sharing the income equally with such future born children or, if there be no such future born children, then until the death of the survivor of said William Sidney Bateman, Jr. and Horace Palmer Beck, Jr.

He further concludes that no part of the principal should be paid to Jonathan at this time, but should be retained by the trustees until the death of such survivor and then distributed to each of all of the children of said William Sidney Bateman, Jr. and Horace Palmer Beck, Jr. per stirpes. He contends that such a dispositive intent does not violate the rule against perpetuities because the gift over to the testator's son and daughter must vest, if at all, during their lives. Finally he argues that the rule of convenience which excludes children born after the first child reaches the required age should not be applied in construing this will. He acknowledges the existence of said rule, but urges that because the intention of the testator is clear it should not be applied in this case to exclude children of William Sidney Bateman, Jr. or Horace Palmer Beck, Jr. born after Jonathan's twenty-fifth birthday.

We now come to the contentions of the respondent Jonathan H. Bateman. He argues that he is now entitled to receive: (1) One third of the principal of the trust and accumulated and accrued income now held by the trustees; (2) the trust income received or accrued by May 4, 1960, the date when he attained the age of twenty-five, and deposited in his separate account for his benefit less the amounts heretofore paid to him or applied for his benefit; and (3) to one third of the net income received by the trustees subsequently to May 4, 1960 and prior to the distribution of the principal to him.

We have carefully considered the contentions of all the parties in interest. By the provisions of the fifth clause

of his will the testator clearly intended to make a gift to a class. The limitation to the children of William Sidney Bateman, Jr. and Horace Palmer Beck, Jr. is a limitation to a class. *Rhode Island Hospital Trust Co.* v. *Calef,* 43 R. I. 518, 520; *Darling* v. *Witherbee,* 36 R. I. 459, 467; *Leo* v. *Armington,* 74 R. I. 297, 300. The narrow issue before this court relates solely to a determination of when the testator intended such class to close.

To be specific, we must ascertain precisely what the testator meant when he used the words "born and maybe born." Did he intend to include in said class only children of his son and grandson in existence when he signed the will and those born between that time and prior to his death? Did he mean only such children of his son and grandson respectively who were living at his death? Or did he intend to provide for the children of said son and grandson whenever born?

As we have already indicated the problem raised by the instant bill depends for its ultimate solution upon the intention of the testator as expressed by the language used in the will. We must look at the whole will. Such intention, if definitely ascertainable and lawful, must govern. But a will is an ambulatory instrument. While it is true that it speaks as of the instant of the death of the testator, it is equally true that in seeking to ascertain his intention we must look back to the time of the execution of the will and, in a proper case, to the circumstances then surrounding the testator as an aid in ascertaining his intention as therein expressed. *Industrial Trust Co.* v. *Saunders, supra.*

After carefully considering all of the provisions of the will and examining the evidence of the circumstances surrounding the testator at the time he executed it, our opinion is that by the insertion of the words "born and maybe born" he clearly intended to limit the class which he created by such words to the children of his son William Sid-

ney Bateman, Jr. and of his grandson Horace Palmer Beck, Jr. who were in being at the time he executed the will and to such children of said son and grandson who might be born between that time and his death. In other words he clearly intended the class which he created to close at his death.

Since the testator's intent is clear and inasmuch as the language used is not ambiguous there is no need to resort to rules of construction. *Sawyer* v. *Poteat,* 90 R. I. 51, 56, 153 A.2d 541, 544. For the same reason the rule of convenience is not applicable. See *Winsor* v. *Brown,* 48 R. I. 200, 204.

In view of our conclusions it is clear that the gifts in question do not violate the rule against perpetuities. Since all members of the class must have been born before the testator's death it follows that the gifts in question are not too remote. Gray, The Rule Against Perpetuities (4th ed.) §378, p. 398. Each child's interest vested at the testator's death notwithstanding that distribution to him was postponed and that such interest would be divested if said child died before attaining twenty-five. *Rhode Island Hospital Trust Co.* v. *Thomas,* 73 R. I. 277; *Hayes* v. *Robeson,* 29 R. I. 216; *Rhode Island Hospital Trust Co.* v. *Noyes,* 26 R. I. 323. Finally, since all members of the class must have been born during the testator's lifetime it follows that the divesting limitation would not be too remote.

In accordance with this opinion we hereby answer the questions propounded by the trustees by instructing them as follows:

(1) To now pay over to Jonathan H. Bateman one third of the principal of the trust together with the income accumulated and accrued on said share up to the time of the actual transfer to him of such share, less any amounts heretofore paid to or applied for his benefit.

(2) Melinda Bateman and Bushnell Bird Beck are each entitled to one third of the trust income received or accrued

by May 4, 1960, the date when Jonathan H. Bateman became twenty-five, less any amounts heretofore paid to or applied for said children respectively, to be held by the trustees and to be paid out, so far as the trustees shall deem necessary, for the care, maintenance, education and support of said children until they respectively reach the age of twenty-five or die under that age, the unexpended balance of the net income of either of said shares to be added to the principal of the share to which it accrues.

(3) Melinda Bateman and Bushnell Bird Beck are entitled to the net income, less any amounts that might have been or may be applied for their benefit respectively, accruing to each of the other two shares in the trust estate after May 4, 1960, said income to be held by the trustees and paid out, so far as the trustees shall deem necessary, for the care, maintenance, education and support of said children until they respectively reach the age of twenty-five or die under that age, the unexpended balance of the net income of either of such shares to be added to the principal of the share to which it accrues. When Melinda and Bushnell respectively reach the age of twenty-five, each shall be entitled, upon attaining said age, to the principal of her respective share and the accumulated income thereof free and discharged of the trust. In addition, after each of said children reaches the age of twenty-five, she shall be entitled to the income accruing to her share during the time between reaching said age and the time she actually receives her share of the principal and the accumulated net income from the trustees.

On July 3, 1961 the parties may present to this court for approval a form of decree, in accordance with this opinion, to be entered in the superior court.

FROST, J., concurring. While I concur in the answers given by the majority to the three questions raised in this case, I am unable to attach the same meaning as the majority to certain inserted words in the fifth clause of the

will and therefore feel it necessary to explain my position.

After reading the will as drawn by his counsel the testator wrote in the words, "born and maybe [sic] born (WSB)" thereby causing the first few lines to read, "To divide the same into as many equal shares and separate trust funds as there are children born and maybe [sic] born (WSB) of my said son Sidney, and my said grandson, Horace, the issue of any deceased said children dying before they attain the age of twenty-five years to take per stirpes and not per capita * * *." The words written in are not technical but simple, everyday words.

The testator was an elderly man. His will was executed on August 5, 1948 and he died on December 6, 1948. As I read his words, he clearly meant and referred to children who might be born at the time of his death and children who might be born in the future to either of the two persons mentioned. The fact that the testator wrote them in as he did indicates his intent and his determination to have any children who might be born either to his son or his grandson share in his bounty. The majority appear to me to read into the inserted words a meaning that is absent. The futurity which the words "may be born" connote is in no way limited by the death of the testator.

Quite naturally when the testator wrote in the words which he did he could not foresee the situation that might develop and the effect that such words could have upon provisions already in the will. He had already provided that a member of the class who had reached twenty-five years should be paid and the trust as to such one be terminated. The words written in could render it impossible for many years to know the number of children in the class and so make it impossible to know the share of each one. We have, it seems to me, a will in which there is a clear conflict in the manifest intentions of the testator, namely, that every child born to either of two persons shares in his property and also that each such child receive his share at

a definite time in such child's life. Since it is seemingly impossible to carry out each intention with absolute exactness it is necessary to adopt a rule of construction sometimes referred to as a rule of convenience. "The general rule of construction adopted with respect to increase in the class membership is that the class may increase in size until the period of distribution but not after that time. In other words, only the persons within the primary meaning of the class description who are born before the period of distribution can be considered." 5 American Law of Property, §22.40, p. 346.

Since no child was born either to William Sidney Bateman, Jr. or to Horace Palmer Beck, Jr. between the execution of the will and the death of the testator the result is the same *in this case* as to the closing of the class, whichever of the two meanings is accepted. Having in mind the rule of convenience referred to, I am in agreement with the majority that the class of those children who might take under the trust established in the fifth clause of testator's will closed on May 4, 1960 when Jonathan H. Bateman became twenty-five years of age. *Darling* v. *Witherbee,* 36 R. I. 459.

As before stated, I am in agreement with the answers of the majority to the three questions submitted.

Roberts, J., concurs in the concurring opinion of Mr. Justice Frost.

*Tillinghast, Collins & Tanner, Colin MacR. Makepeace,* for complainants.

*Edwards & Angell, Walter A. Edwards, Ronald R. Lagueux,* for respondent Jonathan H. Bateman.

*Sheffield & Harvey, J. Russell Haire,* (Newport), for respondent William Sidney Bateman, Jr., individually.

*Corcoran, Peckham & Hayes, Edward J. Corcoran,* (Newport), for respondent Dorothy Bateman Beck.

*John H. Chafee,* for respondent Horace Palmer Beck, Jr.

*John H. Chafee,* Guardian ad litem for Melinda Bateman and Bushnell Bird Beck.

*Roberts and Coffey, Matthew E. Ward,* for respondent Matthew E. Ward, Guardian ad litem for persons not in being or not ascertainable.