252 A.2d 327.

LeRoy Edwards and Ellwood Thomas, *Executors u/w of Maude A. K. Wetmore;* LeRoy Edwards and Charles Moran, Jr., *Executors u/w of Edith Malvina K. Wetmore vs.* Herbert F. DeSimone, *Attorney General of the State of Rhode Island, et al.*

APRIL 9, 1969.

Present: Roberts, C. J., Paolino, Powers, Joslin and Kelleher, JJ.

PAOLINO, J.  This is a complaint[1] for the construction of, and instructions relative to, the separate wills of Maude A. K. Wetmore and Edith Malvina K. Wetmore, sisters who died residents of Newport, on November 3, 1951 and March 10, 1966, respectively.

The plaintiffs are Leroy Edwards and Ellwood Thomas, executors under Maude's will, and Charles Moran, Jr., who together with LeRoy Edwards, is executor of Edith's will.

Joined as defendants with the attorney general and the trustees under the wills of Maude and Edith are Audrey Hoffman Clinton, Iris Sellar Veeder, Norrie Sherman Sellar, and the issue presently living of Audrey, Iris, and Norrie.[2] All interested parties have been made parties defendant. A guardian ad litem has been appointed to represent certain minor defendants and all persons not ascertained and not in being who have or may have any interest in the residuary trusts.  An attorney has been appointed to represent persons in the military service who may have an interest in the cause.  Counsel representing The Preservation Society of Newport County and The Society for the Preservation of New England Antiquities were permitted to enter the case as friends of the court.  All parties are

---

[1] Although the parties have combined in one complaint a prayer for the construction of two separate wills made by two persons, a practice not expressly provided for in G. L. 1956, §9-24-29, as amended, we believe the better practice is to bring separate complaints for each will. In the circumstances we shall consider the wills separately.

[2] Audrey, Iris and Norrie are cousins of and next of kin and heirs at law of Edith and are presently the persons who would have been next of kin and heirs at law of Maude if Maude had survived her sister Edith, and the same persons are takers of life estates in the income from the residuary trusts under the respective wills of Maude and Edith. The issue presently living of Audrey, Iris and Norrie, are or may be entitled to remainder interests under the residuary trusts created by the wills of Maude and Edith. These facts appear in stipulation "A".

represented, except Norrie Sherman Sellar, who was defaulted in the superior court, and all of the attorneys have filed answers.

At the hearing in the superior court certain documents, including the respective wills of Maude and Edith, as well as the will of their father, George Peabody Wetmore,[3] were introduced in evidence. Also introduced in evidence was a letter, dated October 2, 1946, written by Maude to LeRoy Edwards. Additionally, three stipulations were filed in the case, two of which were consented to by all the parties in interest and were admitted as part of the record. The first, marked "B," sets forth the next of kin of Audrey H. Clinton, Iris S. Veeder, and Norrie S. Sellar, the life income beneficiaries under the wills of Maude and Edith. The second, marked "A," sets forth certain facts dealing with the family history and other matters in the complaint. The third,[4] marked "C," is not consented to by all the parties. It was offered in evidence by the attorney general. The trial justice admitted it, over objection, but ruled that it would not bind those parties who did not sign the stipulation. Two witnesses testified in the superior court. The trial justice admitted in evidence, over objection, certain testimony[5] and certain documents[6] relating to the testamentary intentions of Maude and Edith, and he denied a

[3]George Peabody Wetmore served as governor of this state from 1885 to 1887 and as a United States senator from March 4, 1895 to March 1907 and from January 22, 1908 to March 1913.

[4]This stipulation consists of two parts. In the first part it provides that certain facts relating to the testamentary intention of the sisters, if admissible in evidence, would be testified to by competent witnesses. The second part provides that certain documents attached to the stipulation, if relevant and admissible, are authentic. The stipulation provided that the question of admissibility was to be determined at the time of the hearing.

[5,6]The testimony in question relates to certain statements allegedly made by Maude and Edith bearing on their respective testamentary intentions, and to certain correspondence relating to the same question.

motion to strike such of the evidence as related to the question of testamentary intention. If we find that the provisions of the wills are clear and unambiguous, we will not reach these evidentiary rulings. If, however, we find an ambiguity exists, we will be called upon to consider and decide the objections to such evidentiary rulings.

The following facts are pertinent in resolving the questions raised by this complaint. Under the will of their father, George Peabody Wetmore, who died on September 11, 1921, his residence in Newport known as "Chateau-sur-Mer," together with the furnishings, was left in trust for the benefit of his children, along with a fund to provide for its maintenance. The pertinent portions of his will and codicil read as follows:

"IV. Upon the death of my said wife or upon my death in case my said wife shall predecease me, I give, devise and bequeath my residence on Bellevue Avenue, Newport, bounded by said Bellevue Avenue and Shepard, Lawrence and LeRoy Avenues, together with the furniture and property therein contained or used in connection therewith, to my executors or trustees during the life of my children and of the survivor of them as a residence for my children, and at the decease of the survivor to be part of my residuary estate and my Will is that the said estate shall not be sold in the life time of my daughters or of the survivor of them, without the consent in writing of my said daughters and of the survivor of them: In case of a sale the proceeds thereof to be added to my residuary estate:

"V. And as it is my desire that my children should have and enjoy the opportunity of occupying my said residence as a home as long as any of my said children shall live, without the burden of paying the taxes thereon and the cost of upkeep thereof, I give and bequeath to my executors as trustees or the survivor of them upon the death of my said wife or upon my death in case my said wife shall predecease me, the sum of two hundred thousand ($200,000.) to be held and invested during the lives of my said children and of the

survivor of them so long as my said residence on Belle-
vue Avenue shall remain unsold, the income to be
applied to the payment of taxes, insurance, repairs
and maintaining the said residence and property in
good condition and upon the death of the longest sur-
vivor of my said children or upon the sale of said prop-
erty, whichever shall first occur, said residence and
property as also said fund of $200,000. shall be and
become part of my residuary estate:

"VI. Upon the death of my said wife, or upon my
death in case my said wife shall predecease me, I di-
rect that my residuary estate shall be divided into a
number of shares equal to the number of my children
then living plus the number of such of my children
as may be then dead leaving issue them surviving.

"(1) One of such shares I give, devise and bequeath
to my daughter Edith Malvina K. Wetmore, in fee
simple, absolutely and forever; or, in case she shall
have died prior to the time for division fixed above,
leaving issue surviving at that time, to her children,
the child or children of any deceased child to take the
share to which the parent, if living, would be entitled,
*per stirpes* and not *per capita*.

"(2) One of such shares I give, devise and bequeath
to my daughter Maude A. K. Wetmore, in fee simple,
absolutely and forever; or, in case she shall have died
prior to the time for division fixed above, leaving issue
surviving at that time, to her children, the child or
children of any deceased child to take the share to
which the parent, if living, would be entitled, *per
stirpes* and not *per capita*.

"(3) In case my son William Shepard Keteltas Wet-
more shall be living at the time for division fixed above,
I give, devise and bequeath one of the shares men-
tioned above to the trustees hereinafter named in trust,
nevertheless, for the uses and purposes following * * * "

Mr. Wetmore's son, William S. K. Wetmore, died single
without issue on January 30, 1925, and Mr. Wetmore's
wife died on May 31, 1927. Maude died on November 3,
1951, leaving a last will and testament dated June 29, 1950.
At the time of her death she and her sister Edith together

held the sole interest in the residence, the furnishings, and the maintenance fund. Under clause "Tenth" of her will, Maude left her interest in these properties to The Society for the Preservation of New England Antiquities, hereinafter referred to as the Society, subject to a life estate in her sister, Edith. Clause Tenth reads as follows:

"Tenth: All my share and interest in our residential property on Bellevue Avenue, Newport, Rhode Island, together with the furniture and furnishings, pictures, objects of art, and other articles of household use or ornament, therein contained, not hereinabove otherwise disposed of, I give, devise and bequeath to my sister Edith Malvina K. Wetmore, if she survive me, for and during the term of her natural life, hereby directing that she shall not be required to furnish bond or security for their safekeeping and absolving her from liability for any loss, damage or destruction thereof; and at her death, or if she do not survive me then at my death, I give, devise and bequeath the same, together with the principal remaining in the trust created by Article 'V' of the Codicil, dated December 18, 1918, to the will of my father George Peabody Wetmore, to The Society for the Preservation of New England Antiquities. Provided, nevertheless, that I except from the foregoing gift such articles as I have purchased contained in my bed-room, dressing-room or small sitting-room in said Newport house (as distinguished from articles therein formerly owned by my parents or grandparents), and all said excepted articles I give absolutely to my sister Edith Malvina K. Wetmore, if she survive me, and if she do not survive me then to Mrs. Georgette Sherman Brown; requesting, though I do not direct, that such of the articles as I may designate in a letter I may address to them, for the purpose be distributed by them in accordance therewith."

Edith died on March 10, 1966, leaving a will dated May 14, 1952, and four codicils. She also left her interest in the properties in question to the Society. Clause "Ninth" of her will reads as follows:

"Ninth: All my share and all my right, title and interest in and to our residential property on Bellevue Avenue, Newport, Rhode Island, and all the buildings thereon, together with all the furniture and furnishings, pictures, objects of art, and other articles of household use or ornament, and garden implements, thereon, or therein contained, not hereinabove otherwise disposed of (exclusive of automobiles), together with the principal remaining in the trust created by Article 'V' of the Codicil, dated December 18, 1918, to the will of my father George Peabody Wetmore, I give, devise and bequeath to The Society for the Preservation of New England Antiquities (now of Boston, Massachusetts)."

The second codicil, which is dated February 24, 1954, contains the following provisions:

"Whereas by Article 'Ninth' of my said Will, I give all my share, title and interest in and to the residential property on Bellevue Avenue, Newport, together with certain of the furniture and furnishings as therein specified, together with the principal remaining in the trust created by Article 'V' of the Codicil to the Will of my father George Peabody Wetmore, to The Society for the Preservation of New England Antiquities, thereby supplementing and completing a similar gift under the will of my sister, Maude A. K. Wetmore, deceased;

"Now, Therefore, for the better operation and maintenance of said properties, and upon the proviso that said Society shall accept the entire gift, I hereby give and bequeath to the said The Society for the Preservation of New England Antiquities, the additional sum of One Hundred Forty Thousand Dollars ($140,000)."

Subsequent to Edith's death the Society, in 1967, disclaimed[7] and renounced the devises and bequests made to it under the wills of Maude and Edith. These disclaimers

---

[7]The disclaimers were introduced in evidence and are marked as exhibits.

and renunciations are duly recorded in the probate and land evidence records of the city of Newport.

Under clause "Fourteenth" of Maude's will and clause "Twelfth" of Edith's, residuary trusts were created. Both[8] provided, in addition to the usual language, that the residuary trusts shall include " * * * all legacies which may lapse or for any reason fail to take effect."

As we have previously indicated, upon the death of Edith, defendants Audrey H. Clinton, Iris S. Veeder and Norrie S. Sellar, each receive the benefit of the income from one-third part of the residuary trusts, and their issue, presently living, are or may be entitled to the remainder interests respectively of each of the three parts, as provided in the wills. In view of the Society's renunciations the plaintiffs are in doubt as to who are the proper parties under the wills of Maude and Edith to receive bequests and devises, and therefore pray for instructions from this court. Accordingly they request answers to the following questions:[9]

---

[8]The specific language used in both wills (Clause Fourteenth of Maude's will and Clause Twelfth of Edith's will) is as follows:

> "All the rest, residue and remainder of my property and estate, of every nature and description, both real and personal, wheresoever situate, including any and all legacies which may lapse or for any reason fail to take effect, I give, devise and bequeath to my trustees hereinafter named * * *"

The residuary trusts established by their wills are substantially similar. Briefly, Maude provided that the income was to be paid to her sister Edith for her life and thereafter the principal was to be divided equally among her cousins, Norrie S. Sellar, Audrey H. Clinton and Iris S. Veeder. During the lifetime of each of the cousins, the trustees were to distribute the income of their respective shares to them, and upon death, the principal was to be distributed to their issue. Except for the absence of a life estate for Maude, (she having predeceased her sister) Edith's residuary trust is identical to that found in Maude's will.

[9]We note here that in a bill seeking construction it is the will which is certified for construction under G. L. 1956, §9-24-28, as amended, and not specific questions. *Knowles* v. *South County Hospital*, 87 R. I. 303, 140 A.2d 499.

"(a) Is the defendant, LeRoy Edwards, in his capacity as Trustee under the Will of Maude A. K. Wetmore, entitled to property bequeathed to The Society for the Preservation of New England Antiquities under clause Tenth of her Will?

"(b) If he is not so entitled, who is entitled?

"(c) Are the defendants, LeRoy Edwards and Charles Moran, Jr., in their capacities as Trustees under the Will of Edith Malvina K. Wetmore, entitled to the property bequeathed to The Society for the Preservation of New England Antiquities under clause Ninth of her Will and under the provisions of her second Codicil to said Will?

"(d) If they are not so entitled, who is so entitled?

"(e) Depending upon who is so entitled, to what fund or property should the expenses and counsel fees of the parties hereto be charged?

"(f) Depending upon who is so entitled, to what fund or property should the expenses pertaining to the property subject to the renunciations and incurred since the death of Edith Malvina K. Wetmore be charged?"

Upon completion of the hearing in the superior court, the cause being ready for final judgment, a judgment was entered certifying the cause to this court for determination in accordance with the provisions of G. L. 1956, §9-24-28, as amended.

The disclaimers and renunciations by the Society of the devises and bequests in question precipitated the bringing of this action. The attorneys representing the various interests have filed briefs and advanced arguments supporting conclusions most advantageous to their respective interests. The attorney general, representing the interest of the people, argues in substance that the wills are ambiguous and that therefore extrinsic evidence is admissible to prove testamentary intent. He argues further that the wills provided benefits for the public generally and that a new trustee should be appointed by the superior court

to carry out the purposes of the gifts. The sum and substance of the arguments presented by the other interests is that the gifts to the Society are of a noncharitable nature and that therefore the doctrine of *cy pres* is not applicable; that even if this court finds the gifts to be of a charitable nature, neither will discloses an intention to devote the house and other property to general charitable purposes and that therefore the application of *cy pres* is likewise unwarranted; that each will contains an alternative disposition which became operative upon the Society's disclaimer irrespective of whether the testators intended general charitable gifts; and that in the circumstances present in this cause extrinsic evidence should not be considered in determining testamentary intent.

Although we have stated the principal contentions made by the opposing interests, on the view we take, it will not be necessary to discuss them in disposing of the questions raised by this action. The basic question raised by this action is whether, as a result of the disclaimers, the gifts in question become part of the residuary estates of the two sisters or whether, as argued by the attorney general, they constitute a public charitable trust. Our primary obligation is to ascertain, if possible, the dispositive intent of each of the sisters, as expressed in their respective wills, and to give effect thereto unless it is in violation of law. *MacDonald* v. *Manning,* 103 R. I. 538, 239 A.2d 640; *Industrial National Bank of Rhode Island* v. *Votaw,* 104 R. I. 404, 244 A.2d 575. As the court said in the latter case at 578:

> "In determining the interest created by provisions of a will, it is elemental law that the court will examine the document in its entirety to ascertain the dominant intent of the testator and thereafter to give effect thereto so long as no established principle of law is contravened thereby."

After reading Maude's will, and the will and codicils of Edith in their entirety, we are satisfied that the dominant testamentary intent of the two sisters is ascertainable within the four corners of their respective wills and codicils. Consequently, resort to extrinsic evidence is unnecessary and improper, and employment of rules of construction is similarly inappropriate. *Rhode Island Hospital Trust Co. v. Bateman,* 93 R. I. 116, 172 A.2d 84. As previously stated, we shall consider each will separately.

### Maude's Will

In clause Tenth of her will, Maude bequeathed and devised her share in the house and some of its contents to Edith for life, and, upon Edith's death, the same property together with the principal of a trust created under her father's will was left to the Society. The clause, in pertinent part, reads as follows:

> " * * * I give, devise and bequeath the same, together with the principal remaining in the trust created by Article 'V' of the Codicil, dated December 18, 1918, to the will of my father George Peabody Wetmore, to The Society for the Preservation of New England Antiquities."

Clause Fourteenth of her will provides, in pertinent part, as follows:

> "All the rest, residue and remainder of my property and estate, of every nature and description, both real and personal, wheresoever situate, *including any and all legacies which may lapse or for any reason fail to take effect,* I give, devise and bequeath to my trustees * * * ." (italics supplied)

The language of clause Tenth is clear and unambiguous and, therefore, requires no construction. It is an absolute gift of her interest in the properties in question to the Society, subject to a life estate in Edith, with no words of limitation and without any suggestion of a trust of any kind. Extrinsic evidence cannot be introduced to make ambiguous language which on its face is clear and unam-

346

biguous. Nor can Edith's will be used to impute ambiguity to Maude's will. Maude attempted to make an unconditional gift to the Society, which, for reasons of its own, declined the gift.

The gift to the Society was not of a charitable nature and, therefore, the doctrine of *cy pres* is not applicable and the gifts in question pass under Maude's residuary clause. Restatement (Second) of Trusts §399, at 297; *MacDonald v. Manning, supra; Kelly v. Nichols*, 17 R. I. 306, 21 A. 906; *Jackson v. Phillips*, 96 Mass. (14 Allen) 539, 556. But even if it were charitable in nature, *cy pres* would not be applicable because of the presence in Maude's will of the alternative disposition. She has spoken clearly with respect to her paramount, dispositive intent relative to any and all legacies which may fail to take effect. *Pennsylvania Co. for Banking and Trusts v. Board of Governors*, 79 R. I. 74, 83 A.2d 881; *Bowditch v. Attorney General*, 241 Mass. 168, 134 N. E. 796. Maude's will being clear and free of ambiguity, it follows that upon the disclaimer and renunciation by the Society, the devise and bequests in question have failed to take effect and therefore pass under the residuary trusts created in clause Fourteenth of her will.

### Edith's Will

As herein previously indicated, Edith, in clause Ninth of her will devised and bequeathed her interest in the house, some of the contents, and the principal in her father's trust to the Society. In the second codicil she added the following:

> "Now, Therefore, for the better operation and maintenance of said properties, and upon the proviso that said Society shall accept the entire gift, I hereby give and bequeath to the said The Society for the Preservation of New England Antiquities, the additional sum of One Hundred Forty Thousand Dollars ($140,000)."

In clause Twelfth of her will she provides for the disposition of her residuary estate in language substantially similar to clause Fourteenth of Maude's will. The residuary trusts established in Edith's will are also substantially similar to those established in Maude's.

We find no ambiguity in the language of Edith's will or of her second codicil. In her will she made an absolute gift of her interest in the properties in question to the Society and, by her codicil, she made an outright gift of $140,-000 "for the better operation and maintenance of said properties * * * ." However, she provided therein that the gift of the additional money was conditioned upon the acceptance of the entire gift by the Society. Then she went further by contingently providing in her residuary clause for a disposition of the gift if the Society should refuse it. She expressly provided that her residuary estate, including "all legacies which may lapse or for any reason fail to take effect," would pass to the benefit of her cousins and their issue under the residuary trusts created by her residuary clause. The addition of the words "for the better operation and maintenance of said properties" does not change the nature of the gifts made to the Society by Edith.

Edith's intention with respect to the properties in question is readily ascertainable from her will and codicils and therefore resort to extrinsic evidence is unnecessary and improper. *Rhode Island Hospital Trust Co.* v. *Bateman, supra.* Upon disclaimer by the Society, the gifts to it passed into the residuary trusts created under clause Twelfth of Edith's will.

In accordance with the foregoing, we answer the questions stated in paragraph Seventeenth of the complaint, in the same order as they are therein listed as follows:

    (a) Yes.
    (b) The question is disposed of by the answer to question (a).
    (c) Yes.

(d) The question is disposed of by the answer to question (c).

(e) The expenses and counsel fees of the parties hereto should be charged against the estates of Maude and Edith in equal amounts.

(f) The expenses pertaining to the property subject to the renunciations and incurred since Edith's death should be charged against the principals of the respective residuary trusts in equal amounts.

The parties may present for our approval a judgment in accordance with this opinion to be entered in the superior court.

*Sheffield & Harvey, Richard B. Sheffield,* for plaintiffs.

*W. Slater Allen, Jr.,* Special Assistant Attorney General, *Corcoran, Peckham & Hayes, William W. Corcoran,* of counsel, for The Preservation Society of Newport County.

*Umsted & Going, Joseph B. Going,* guardian ad litem, for minor defendants.

*Tillinghast, Collins & Tanner, Edwin H. Hastings, Townsend M. McAlpin,* for Audrey H. Clinton, Iris S. Veeder and their adult children.

*Graham, Reid, Ewing & Stapleton, Joachim A. Weissfeld, Pepper, Hamilton & Scheetz, Edward W. Madeira, Jr.,* for Rita D. S. Thornton, Norrie W. Sellar, Rosalie D. S. Berl, Alix C. S. Sadron and Owen N. Sellar, defendants.

*Charles F. Cottam,* Amicus Curiae, *Mortimer A. Sullivan,* guardian ad litem.